UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

    Petitioner,

v.                                                             Civ. No. 21-304 WJ/GJF

WAYNE SANTISTEVAN, Warden, and,
ATTORNEY GENERAL for the
STATE OF NEW MEXICO,

    Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court[1] on a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241[2] [ECF 1], Respondents' Answer [ECF 9], and Petitioner's Reply [ECF 20]. Having reviewed the briefing, the record, the relevant law, and otherwise being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.

I.    **RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

Bryce Franklin ("Franklin") is an inmate serving a term of life imprisonment plus 7½ years in the custody of the New Mexico Corrections Department ("NMCD") for a 2012 murder conviction. *See State v. Bryce L. Franklin*, No. D-1333-CR-2012-00184 (Aug. 24, 2015) (Judgment/Order), https://researchnm.tylerhost.net/CourtRecordsSearch/ViewFiling/e99a6564f1

---

[1] Chief U.S. District Judge William Johnson referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF 8. The Court concludes that no evidentiary hearing is required or permitted. *See* 28 U.S.C. § 2254(e)(2).

[2] As explained below, Plaintiff filed his Petition under 28 U.S.C. § 2254, but the Court has construed it as one under 28 U.S.C. § 2241. *See* ECF 6 at 1 (citation omitted).

d05df19c63a3d0808c299c.[3] In May 23, 2019, while incarcerated at the Guadalupe County Correctional Facility ("GCCF"), Franklin was charged with the category A, major-level disciplinary offense of dealing in dangerous drugs. ECF 9-1 at 275 (Ex. Q). According to the underlying misconduct report, this charge arose from prison officials' discovery of a substance that field-tested positive for buprenorphine[4] in Franklin's incoming legal mail. *Id*. Following the issuance of the misconduct report and an investigation, Franklin appeared at a June 24, 2019 disciplinary hearing at which he was advised of, and denied, the charge against him. *Id*. at 271. In addition to denying the charge, Franklin made a statement, moved for dismissal on various grounds, and requested that the substance in question be tested by an outside laboratory. *Id*. His motions and his request for outside testing were denied. *Id*. After a review of the evidence and testimony presented at the hearing, the disciplinary hearing officer found Franklin guilty of dealing in dangerous drugs. *Id*. As a result, Franklin forfeited 120 days of visitation privileges. *Id*. at 270.

Franklin filed a disciplinary appeal in which he argued first that GCCF failed to follow NMCD disciplinary policies, both because the disciplinary hearing was conducted outside the applicable time limits (*i.e.*, within seven working days of discovery of the substance in his incoming mail) and because GCCF refused his request for outside testing. *Id*. at 294–96 (Ex. R). In addition, Franklin asserted that the disciplinary decision was based on insufficient evidence because (1) he was not aware that buprenorphine was in his incoming mail, (2) he could not control what was sent to him, and (3) he never had possession of the substance. *Id*. On August 6, 2019, Franklin's disciplinary appeal was denied. *Id*. at 292.

---

[3] The Court may take judicial notice of the official records of New Mexico courts. *See United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that a federal court may take judicial notice of publicly filed records in other courts concerning matters that bear upon the disposition of the case at hand).

[4] "Buprenorphine is an opioid medication used to treat opioid use disorder . . . , acute pain, and chronic pain." www.drugs.com/buprenorphine.html (last visited Apr. 9, 2024).

On September 5, 2019, Franklin filed a state petition for writ of habeas corpus, asserting arguments that mirrored those in his disciplinary appeal: that GCCF failed to follow the applicable time limits for holding a hearing; that prison officials refused to test the substance at issue in an outside laboratory; and that there was no evidence to support the misconduct report or the disciplinary conviction against him. *Id*. at 1, 8 (Ex. A). Although Franklin claimed a liberty interest in his forfeited visitation privileges, he insisted that his due process rights were violated even in the absence of a cognizable liberty interest, because there was no evidence to support his disciplinary conviction. *Id*. at 7. Franklin further asserted that the disciplinary hearing officer failed to provide a meaningful explanation of the disciplinary findings against him. *Id*. at 8-9.

The state district court dismissed Franklin's state habeas petition, reasoning that although visitation privileges cannot be *indefinitely* suspended absent process, Franklin's privileges were suspended for a *definite* period of 120 days. *Id*. at 242 (Ex. N). In the state court's view, Franklin's 120-day suspension of visitation privileges did not rise to the level of a protected liberty interest. *Id*. Moreover, in terms of process, the court determined that Franklin "was provided more than that to which he was entitled under law." *Id*. at 243 (citing *Cordova v. Lemaster*, 96 P.3d 778 (N.M. 2004)). The court observed that Franklin was given notice of the charges against him and a disciplinary hearing and, further, that he was permitted to appeal to both the Warden and the Secretary of Corrections. *Id*. at 242. Franklin next filed a petition for writ of certiorari [*id*. at 245–64 (Ex. O)], which the New Mexico Supreme Court denied on February 26, 2021 [*id*. at 269 (Ex. P)].

On April 5, 2021, Franklin filed his Petition for Habeas Corpus under 28 U.S.C. § 2254 in this Court. *See* ECF 1. After its initial review, this Court determined that the Petition "should be construed under 28 U.S.C. § 2241," as it "attacks 'the execution of a sentence,' including 'prisoner

3

disciplinary matters[,]'" rather than the validity of his sentence. ECF 6 at 1 (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)).

## II. PARTIES' ARGUMENTS

In the instant federal habeas petition, Franklin seeks a declaration that prison officials violated his due process rights as well as expungement of the underlying misconduct report from his prison file. ECF 1 at 11. He advances three grounds for relief: (1) the disciplinary finding against him was unsupported by evidence; (2) he did not receive a meaningful explanation as to why he was found guilty of the offense of dealing in dangerous drugs; and (3) prison authorities ignored his request for outside testing. ECFs 1 at 12–13; 20 at 3–5.

For their part, Respondents urge the Court to deny the Petition and dismiss this action with prejudice for three primary reasons. First, they contend that the declarative and injunctive relief that Franklin seeks is not available in a federal habeas proceeding. ECF 9 at 6–8. Second, they insist that the loss of visitation for a determinate period does not implicate a protected liberty interest that triggers due process protections. *Id*. at 8–9. Finally, Respondents contend that Franklin's due process claims otherwise fail on the merits. *Id*. at 9–14.

## III. ANALYSIS

Certain challenges to prison disciplinary proceedings are properly brought under 28 U.S.C. § 2241 as challenges to the fact or duration of confinement. *See McIntosh*, 115 F.3d at 812; *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017). But, critically, claims cognizable under § 2241 are limited to those in which the petitioner "seeks either immediate release from, or a shortened period of, physical imprisonment, *i.e.*, placement on parole or in a parole-like custodial setting, or immediate release from, or a shortened period of, custody altogether." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012) (citations omitted). For instance, when a federal

habeas petition challenges disciplinary actions revoking good-time credits—and thereby seeks to shorten the duration of imprisonment—such a petition is properly brought pursuant to § 2241. *See Boyce v. Ashcroft*, 251 F.3d 911, 914, *vacated as moot*, 268 F.3d 953 (10th Cir. 2001) (reasoning that "demands to restore good time credits are within the core of [§ 2241] because they attack the duration of the prisoner's physical confinement") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485–89 (1973)); *Untied States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) ("Although *Boyce* was vacated as moot on rehearing, we are persuaded by its reasoning."). In contrast, objections to disciplinary sanctions that involve merely the restriction of inmate privileges, such as mail, telephone, or visitation privileges, are more properly characterized as challenges to conditions of confinement and are not cognizable in a federal habeas corpus action. *See Pinson v. Berkebile*, 553 F. App'x 852, 853 (10th Cir. 2014) (concluding that a petitioner's challenge to a prison's restrictions of his mail and telephone privileges must be through a civil rights action, not through federal habeas proceedings); *Ricco v. Conner*, 146 F. App'x 249, 251–53 (10th Cir. 2005) (determining that "the district court erred by failing to recognize that § 2241 is an improper vehicle for" claims related to disciplinary sanctions that temporarily restricted visitation, commissary, and telephone privileges).

      Here, Franklin maintains that he is entitled to federal habeas relief because prison officials violated his due process rights during disciplinary proceedings in which he was found guilty of dealing in dangerous drugs. *See* ECFs 1 at 11–13; 20 at 1. For relief, he seeks a declaration that his due process rights were violated and expungement of the underlying misconduct report. ECF 1 at 11. Notably, the record reveals that, as a consequence of his disciplinary conviction, Franklin did *not* lose any good-time credits, but instead lost 120 days of visitation privileges. *See* ECF 9-1 at 270; *see also id*. at 7 (Franklin arguing, in his state habeas petition, that he was sanctioned to a

loss of 120 days of visitation, which in his view implicates a liberty interest for which he was entitled to due process) (citing *Cordova*, 96 P.3d 778). Construing Franklin's claims broadly, he appears to suggest that Respondents impinged upon his protected liberty interest in visitation privileges by subjecting him to disciplinary proceedings without due process.[5] *See* ECFs 1 at 5; 20 at 4.

Respondents, on the other hand, maintain that the relief Franklin seeks is simply unavailable in a federal habeas proceeding. ECF 9 at 6. To this end, they emphasize that "the Tenth Circuit has unambiguously stated that . . . 'a prisoner who challenges the conditions of his confinement must do so through a civil rights action.'" *Id*. (quoting *Palma-Salazar*, 677 F.3d at 1035). Respondents urge this Court to follow the lead of Judges Ritter and Vázquez of this District, who concluded in a previous federal habeas action brought by Franklin that due process claims challenging a disciplinary action that had no impact on Franklin's good-time credits or the duration of his imprisonment were not cognizable under 28 U.S.C. § 2241.[6] *Id*. at 7 (citing *Franklin v. Lucero*, No. CIV-18-1239 MV/JHR, 2019 WL 6075290 (D.N.M. Oct. 17, 2019)).

---

[5] Alternatively, Franklin suggests that he need not demonstrate a protected liberty interest to support his due process claims here, because there was "no evidence" to support the disciplinary charge against him for dealing in dangerous drugs. ECF 20 at 3. The Court observes that the cases upon which Franklin relies for this proposition were decided in the context of criminal convictions rather than prison disciplinary sanctions and therefore the Supreme Court, in the cited cases, did not discuss the need to demonstrate a protected liberty interest. *See id*. (citing *California v. Green*, 399 U.S. 149, 187 n.20 (1970) (holding that "[d]ue process does not permit a [criminal] conviction based on no evidence, . . . or on evidence so unreliable and untrustworthy that it may be said that the accused has been tried by a kangaroo court") (internal citations omitted); *Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960) ("Just as [a criminal c]onviction upon a charge not made would be sheer denial of due process, so is it a violation of due process to convict and punish a man without evidence of his guilt."), *rev'd*, *Jackson v. Virginia*, 443 U.S. 307, 320 (1979) (holding that the "*Thompson* 'no evidence' rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt). Franklin has not pointed the Court to any case to support his position that he need not demonstrate a protected liberty interest to establish a due process claim in the context of disciplinary proceedings. *But see Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994) (reasoning that "[a] state inmate's due process rights are implicated only when a state's actions impinge on a protected liberty interest") (citation omitted). Even if Franklin could pursue a due process claim without first demonstrating a protected liberty interest, the Court cannot accept his underlying premise that there was, in fact, no evidence to support the disciplinary finding against him here. *See infra* pp. 11-14.

[6] In *Franklin v. Lucero*, No. CIV-18-1239 MV/JHR, 2019 WL 6075290 (D.N.M. Oct. 17, 2019), Franklin challenged the step-regression method used by NMCD's Predatory Behavior Management Program and sought a declaration that

The Court agrees that Franklin's claims here are not suited to federal habeas relief, as they do not challenge the execution of a sentence or its validity.[7] *See* 28 U.S.C. § 2241, § 2254. Even construing his habeas petition as one under § 2241 rather than § 2254, the Court cannot say that the disciplinary sanction about which Franklin complains impacted the fact or the duration of his imprisonment. *See McIntosh*, 146 F. App'x at 811–12 (while "a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters," such challenges are only permitted when the action "affect[ed] the fact or duration of the [petitioner's] custody."). Nor does Franklin's federal habeas petition seek a shortened period of confinement. As such, Franklin's claims are not cognizable under 28 U.S.C. § 2241.[8]

Even if Franklin *could* pursue his claims in the context of a federal habeas proceeding, he fails to demonstrate a violation of his due process rights. To begin, conduct only implicates an inmate's due process rights if it "impinge[s] on a protected liberty interest." *Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994) (citing *Vitek v. Jones*, 445 U.S. 480, 488–90 (1980)). Put another way, "[i]ndviduals claiming procedural protections must first establish that a constitutionally-protected interest is at stake." *Schneider v. Jones*, No. 09-1169-M, 2011 WL 1467755, at *2 (W.D.

---

the method violated his due process rights. *Id.* at *1–2. In evaluating his habeas petition, Judge Ritter observed, and Judge Vázquez agreed, that the step-regression method Franklin challenged had not impacted his good-time credits or the duration of his imprisonment, and, thus, his claims were not cognizable under 28 U.S.C. § 2241. *Id.* at *2; *Franklin v. Lucero*, No. 18cv1239 MV/JHR, Doc. 18 (D.N.M. Nov. 15, 2019) (Order Adopting Proposed Findings and Recommended Disposition).

[7] This is not to say that there are no available means for an inmate to seek declaratory or injunctive relief based upon the deprivation of visitation privileges in violation of due process. Rather, 42 U.S.C. § 1983 provides a remedy for inmates who are successful in their "constitutional challenges to . . . prison decisions[,] including . . . suspension of privileges." *Requena v. Roberts*, 552 F. App'x 853, 856 (10th Cir. 2014). But, here, Franklin has chosen to pursue due process claims in the context of a federal habeas petition rather than a civil rights action. This he cannot do.

[8] To the extent Franklin asserts that his disciplinary conviction for dealing in dangerous drugs denied him due process *under state law* [*see* ECF 1 at 13], that claim fails for an additional and independent reason: that is, "claims of state law violations are not cognizable in a federal habeas action." *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).

Okla. Mar. 18, 2011) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Protected interests may arise from the Constitution itself or from expectations created by state law." *Id*. (citation omitted). But, here, Franklin simply fails to identify any protected interest at stake.

Even so, the Court acknowledges that the denial of an inmate's visitation privileges in some circumstances could constitute a constitutionally-protected liberty interest. In *Sandin v. Conner*, the United States Supreme Court clarified that, in the prison context, liberty interests protected by due process are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Following *Sandin*, the Supreme Court in *Overton v. Bazzetta*, 539 U.S. 126 (2003) suggested that "[i]f the withdrawal of all visitation privileges were permanent or for . . . much longer [than two years], or if it were applied in an arbitrary manner to a particular inmate," such a deprivation might implicate the inmate's due process rights. *Id*. at 137. In addition, the New Mexico Supreme Court has recognized that a liberty interest in "spousal visitation," if indefinitely suspended, would impose upon the inmate "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Cordova*, 96 P.3d at 784–85 (citing *Bazzetta v. McGinnis*, 286 F.3d 311, 323 (6th Cir. 2002), *rev'd on other grounds*, *Overton v. Bazzetta*, 539 U.S. 126 (2003)). Thus, if Franklin could demonstrate that a 120-day suspension of his visitation privileges impinged upon his liberty interest in a manner that imposed an atypical and significant hardship on him as an incarcerated individual, his due process rights may be implicated.

But neither *Bazzetta* nor *Cordova* are helpful to Franklin in this endeavor. First, Franklin's 120-day suspension of his visitation privileges cannot be said to be "much longer" than two years, as contemplated in *Bazzetta*. Nor were Franklin's privileges "indefinitely" suspended, as was the

8

case in *Cordova*. Simply put, Franklin has not pointed to any authority to support the notion that the *temporary* suspension of visitation privileges for 120 days implicates due process protections.

Moreover, even if Franklin could demonstrate a protected liberty interest, this Court is satisfied, just as the state district court was, that he received the process to which he was entitled. In *Wolff v. McDonnell*, the Supreme Court observed that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." 418 U.S. 539, 556 (1974). The Court went on to emphasize that "the full panoply of rights due a defendant" in a criminal prosecution do not apply in prison disciplinary proceedings. *Id*. (citation omitted). Instead, "where a prison disciplinary hearing may result in the loss of good time credits," thereby shortening the inmate's sentence, the inmate is entitled to:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). Expanding on these requirements, the United States Supreme Court further held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' . . . unless the findings of the prison disciplinary board are supported by *some evidence* in the record." *Id.* at 454 (emphasis added) (internal citations omitted). According to the Tenth Circuit, though, even "meager" evidence supporting the decision will suffice. *Mitchell v. Maynard*, 80 F.3d 1443, 1445 (10th Cir. 2017) (reasoning that the requirements of procedural due process are met even if the evidence supporting a disciplinary decision is "meager"). In ascertaining whether *Hill's* "some evidence" standard is satisfied, the Court need not examine the entire record, assess the credibility of the witnesses, or weigh the evidence. *Hill*, 472 U.S. at 455–56.

Putting aside Franklin's failure to challenge the fact or duration of his sentence and his failure to identify a constitutionally-protected interest, the Court examines the process he was afforded during his disciplinary proceeding. In so doing, the Court bears in the mind the deference it must accord a state court's determination of a federal constitutional issue. That is, in order to secure habeas relief, Franklin would need to show that the relevant state court decision—that he failed to identify a protected liberty interest and was provided more process than he was due—was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Brown v. Ulibarri*, No. 07-2124, 2008 WL 4739016, at *2 (10th Cir. Oct. 30, 2008) (citing and applying § 2254(d)'s deferential standard of review to a state prisoner's § 2241 challenge); *Preble v. Estep*, No. 06-1195, 2006 WL 2212686, at *2 (10th Cir. Aug. 4, 2006) (same). And not only must the Court give deference to the state court's determination of Franklin's due process claims, it must likewise afford deference to the underlying decisions of state correctional authorities, given their expertise in prison management and administration. *See Bazzetta*, 539 U.S. at 132 ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

As Respondents observe, Franklin was afforded numerous procedural safeguards during the course of the disciplinary proceedings. ECF 9 at 11–12. He was provided notice of the charge against him and received a copy of the inmate misconduct report, which detailed the charge and identified the time and date of the incident underlying that charge. *Id*. at 273–75. Thereafter, Franklin was interviewed and denied any culpability. *Id*. at 276. Franklin acknowledged receipt of

disciplinary materials and was notified of his right to appear at a disciplinary hearing. *Id*. at 272. At the disciplinary hearing, Franklin was advised of his rights to remain silent, to be assisted by a staff member or fellow inmate, and to call witnesses, though he appears to have waived each of these rights. *Id*. at 271. Also at the hearing, Franklin viewed the evidence against him and submitted three written motions to dismiss, which the disciplinary officer considered but denied. *Id*. The hearing officer advised Franklin of his right to appeal the disciplinary finding, which he later did, and she issued a written disciplinary decision setting forth the basis for her guilty finding. *Id*. at 270. Following his disciplinary conviction, Franklin pursued the administrative appeal process about which he was advised. *Id*. at 292–97. This level of process stands in stark contrast to that provided in *Cordova*. *See* 96 P.3d at 785–86 (reasoning that the petitioner was provided "no process" before his visitation privileges were *indefinitely* suspended without any articulated basis). Given the process that Franklin received, the Court discerns no reason to conclude that the state court's determination of Franklin's due process claims was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d).

Moreover, Respondents maintain, and this Court agrees, that there *is* evidence in the record that supports the hearing officer's decision to impose disciplinary sanctions against Franklin. Most notably, the disciplinary decision is supported by a misconduct report in which K-9 Officer Quinonez indicated that Franklin "introduced [b]uprenorphine by receiving it in Legal Mail" and further reported that he field-tested the substance and certified that it was buprenorphine. ECF 9-1 at 298, 303. The disciplinary decision provides that it was "based on a thorough review of all evidence and documents submitted," which included Quinonez's misconduct report, a Substance

Test Record/Chain of Custody of "33 strips of orange substance paper," Confirmation Test Information, three photographs, a Memorandum of Inspection of Legal Mail, and an Incoming Legal Correspondence Log. *See* ECF 9-1 at 270, 277–89, 298. Thus, Franklin's contention that "there is not a shred of evidence to support the charge" is belied by the record. After all, even a misconduct report alone satisfies *Hill's* "some evidence" standard so long as it sets out the basis for the disciplinary charge, which it does in this case. *See Ruelas v. Zuercher*, 240 F. App'x 796, 797 (10th Cir. 2007) (concluding that the incident report alone was "some evidence" of the petitioner's guilt); *Schneider*, 2011 WL 1467755, at *5 (reasoning that the "Misconduct Report which set[] out the factual basis for the offense and the photograph of the contraband me[]t the 'some evidence' standard").

The crux of Franklin's arguments to the contrary is that there was no evidence to support his disciplinary sanction because the substance in question was never in his possession or control and was instead only discovered in mail addressed to him. *See* ECF 20 at 3–5. According to Franklin, he was called into a Lieutenant's office at GCCF to sign for legal mail, and during a search of his incoming mail, prison officials discovered a "foreign substance." *Id*. at 2. Emphasizing that the substance was never in his actual possession, Franklin posits that someone who "dislikes" him could simply mail drugs or other prohibited items to his address and "keep his privileges restricted." *Id*. at 4. Franklin relies upon *State v. Gonzales*, 525 P.2d 916 (N.M. Ct. App. 1974), *overruled on other grounds by State v. Bender*, 579 P.2d 796 (1978) and *State v. Reed*, 964 P.2d 113 (N.M. 1998) for the proposition that, absent actual possession, there was insufficient evidence to support his underlying disciplinary conviction for dealing in dangerous drugs. ECF 20 at 4. First, he suggests that "in order [to] traffic a controlled substance[,] you must first possess it." *Id*. (citing *Gonzales*, 525 P.2d 916). Second, he maintains that because "[t]here are no collaborating

12

factors such as suspicious behavior, positive urine sample or admission," the record does not contain sufficient facts suggesting that he knew his incoming mail contained drugs. *Id*. (citing *Reed*, 964 P.2d at 115).

Franklin's reliance on *Gonzalez* and *Reed* is misplaced, however. In both cases, the New Mexico appellate courts addressed *criminal* convictions for drug-related offenses. *See Gonzales*, 525 P.2d at 917–18 (appeal of drug trafficking conviction); *Reed*, 964 P.2d at 113 (appeal of conviction for possession of cocaine). In *Reed*, the New Mexico Supreme Court found insufficient evidence—in the absence of corroborating evidence, such as drug paraphernalia, intoxicated behavior, a positive urine sample, flight, or an admission—to support an inference that the defendant knew a cigarette wrapper in his possession contained trace amounts of cocaine. *Reed*, 964 P.2d at 115. But the standards that apply to appellate review of a criminal conviction do not apply to Franklin's habeas challenge to the disciplinary proceedings against him. And critically, actual possession of contraband need not always support a disciplinary conviction related to that contraband. *See, e.g.*, *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (2007) (denying a § 2241 petition on the basis that there was "some evidence" to support the disciplinary sanction of a loss of good-time credits for possession of drug paraphernalia, where paraphernalia was not in the inmate petitioner's actual possession but was found among his legal papers) (citation omitted); *see also Dailey v. Oliver*, No. 13-CV-03322-KMT, 2014 WL 5347369, at *3–4 (D. Colo. Oct. 21, 2014) (holding, in a § 2241 proceeding, that there was "some evidence" to support a disciplinary conviction for attempted possession of narcotics, where the inmate petitioner signed for books that were sent to him via certified mail and in which marijuana was found); *Thompson v. Hawk*, 978 F. Supp. 1421 (D. Kan. 1997) (reasoning, under the constructive possession rule, that there was evidence to support a disciplinary conviction for possession of a weapon, where the weapon was

found in a light fixture in the inmate petitioner's cell, even though the cell door was left open during the day and potentially accessible by other inmates). In light of the deference accorded both the state court decision and the underlying disciplinary decision, and applying the *Hill* "no evidence" standard to the disciplinary conviction here, Franklin's arguments regarding the lack of actual possession are unavailing.

Franklin's Petition could also be construed to assert a claim that his due process rights were violated when he was denied the opportunity to present exculpatory evidence during his disciplinary proceeding. *See* ECF 1 at 13. Specifically, Franklin complains that he was denied the opportunity to conduct outside testing of the substance discovered in his incoming mail. *See id*. Although the right of an inmate to present witnesses and/or documentary evidence in a disciplinary proceeding is central to the procedural requirements under *Wolff*, that right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Indeed "[p]rison officials must have the necessary discretion to keep the [disciplinary] hearing within reasonable limits." *Wolff*, 418 U.S. at 566. In addition, harmless error review applies to a habeas petition in which an inmate alleges a violation of his due process rights in a disciplinary proceeding. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (reasoning that harmless error review applied to a petitioner's habeas claim that prison officials violated his due process rights by denying his request to present witness testimony at a disciplinary proceeding). In applying the harmless error doctrine, a "prisoner cannot maintain a due process claim . . . unless he also shows that the [evidence he sought to introduce] 'would have affected the outcome of his case.'" *Bird v. Pacheco*, 729 F. App'x 627, 631 (10th Cir. 2018) (citing *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993)).

Here, Franklin has failed to argue, let alone establish, that the Respondents' interest in swift discipline should have given way to his request for outside laboratory testing. Nor has he offered any basis from which the Court could conclude that the requested outside testing would have revealed the substance in question to be something other than buprenorphine for which Quinonez received a positive field test. In fact, Franklin has altogether disavowed knowledge of the contents of the subject mail. Given Respondents' strong interest in keeping disciplinary proceedings within "reasonable limits," *see Wolff*, 418 U.S. at 566, and because there is no credible reason to believe that another round of testing by an outside laboratory would have exonerated Franklin, *see Schneider*, 2011 WL 1467755, at *4, the Court is not persuaded that Respondents' refusal to permit outside testing could somehow rise to the level of a due process violation, even had Franklin established a protected liberty interest.

Finally, Franklin asserts that Respondents failed to provide a meaningful explanation of his guilty finding, thereby denying him due process. ECF 1 at 12. While an inmate faced with the loss of good-time credits would be entitled, as a matter of due process, to a written statement by the disciplinary factfinder of the evidence upon which she relied and the reasons for the disciplinary action, Franklin was neither faced with such a loss nor deprived of such a statement. As explained above, Franklin received a written disciplinary decision detailing the evidence on which the hearing officer relied in reaching her decision that Franklin was guilty of dealing in dangerous drugs. Most notably, the decision rested, at least in part, on the misconduct report in which K-9 Quinonez indicated that Franklin "introduced [b]uprenorphine by receiving it in Legal Mail" and that he had field-tested the substance and certified that it was buprenorphine. ECF 9-1 at 298, 303.

At bottom, Franklin's complaint regarding the adequacy of the written report is that the disciplinary hearing officer did not explain why she believed the testimony of the prison official over his own testimony. But the Court is not persuaded that this level of granularity was required. To be sure, the disciplinary officer was not required to credit Franklin's version of events. And here, on § 2241 review, it is not the Court's role to reweigh the testimony presented to the disciplinary officer. Ultimately, the Court finds that the written disciplinary decision passes muster because it detailed the disciplinary finding and the evidentiary basis for that finding. Nothing more was required.

In sum, Franklin seeks relief that is unavailable in a federal habeas proceeding, and he fails to identify a constitutionally-protected interest that would implicate his due process rights. Moreover, the Court is satisfied that Franklin's disciplinary hearing complied with any due process requirements under *Wolff*. The Court further concludes that the state court's decision on Franklin's state habeas petition did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. Nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented.  For all of these reasons, the Court recommends that Franklin's federal habeas petition be denied.

Respondents ask the Court to deny a certificate of appealability. ECF 9 at 1. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *see also Montez*, 208 F.3d at 869 (holding § 2253(c)(1)(A) applies when a state habeas petitioner is proceeding under § 2241). A certificate of appealability may issue only if Franklin "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For all the reasons discussed above, Franklin has

failed to demonstrate a violation of his due process rights. As such, he is not entitled to a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Franklin's Petition for Writ of Habeas Corpus be **DENIED** and this case **DISMISSED WITH PREJUDICE**. The Court **FURTHER RECOMMENDS** that no certificate of appealability be granted.

**SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**